*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DUSTIN SHANE SWOAPE,

        Defendant-Appellant.

UNPUBLISHED
January 19, 2023

No. 360049
St. Joseph Circuit Court
LC No. 20-023573-FH

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his guilty plea conviction of witness intimidation by threat to kill or injure, MCL 750.122(7)(c). The trial court sentenced defendant to 10 to 15 years' imprisonment. We affirm.

## I. BACKGROUND

According to the presentence investigation report (PSIR), on June 5, 2020, defendant was placed on probation for prior convictions of operating while intoxicated, MCL 257.625.[2] On July 14, 2020, defendant was arrested and returned to jail for violating his probation after he assaulted his wife at their home. During the incident, defendant was intoxicated and attempted to force his wife to have intercourse with him despite her protests. Defendant was charged with domestic violence (third offense), MCL 750.81(5).

According to the PSIR, defendant made 27 phone calls to his wife from jail between July 2020 and October 2020. In at least five of those calls, which were recorded, defendant threatened

---

[1] See *People v Swoape*, unpublished order of the Court of Appeals, entered March 2, 2022 (Docket No. 360049).

[2] The PSIR was the key evidence the trial court relied on at the sentencing. Defendant did not present a challenge to the accuracy of the PSIR at his sentencing. Additionally, the trial court credited the PSIR and its findings in the sentencing determination.

to kill his wife once released from jail if his wife did not drop the domestic violence charges. Defendant also told his wife that his aunt would wait at his wife's house and hurt her if any of the charges against defendant "stuck." Further, defendant sent his wife threatening messages through a cell phone application (app) the jail utilizes for inmates to send texts to family members. Defendant again threatened to kill his wife if the domestic violence charges were not dropped and stated that "if he gets out that he would kill her and at least go to jail for a reason." Defendant also sent messages through the app to his children that threatened to kill their mother.

On November 24, 2020, defendant was charged with witness intimidation by threat to kill or injure in relation to the harassing telephone calls. During the plea hearing on May 25, 2021, which the court held in relation to both cases, defendant pleaded guilty to both the domestic violence charge and the witness intimidation charge. Defendant accepted a plea agreement that, in exchange for pleading guilty to both the domestic violence and witness intimidation charges, the fourth-offense habitual offender enhancement under MCL 769.12 would be dropped and the sentences for both the domestic violence and witness intimidation charges would run concurrently.

At the sentencing hearing, defendant asked the court to consider his psychiatric treatment and mental health in its sentencing determination. Defendant also asked the court to allow him to participate in a drug and alcohol treatment program. During her witness statement, his wife stated that defendant was diagnosed with schizophrenia and bipolar disorder, and has been "on and off the medicines several times." His wife expressed that "[w]hen [defendant] drinks he is a monster," and that she had suffered "the hell he put [his family] through for 13 years."

Defendant's wife also stated that during one of their phone calls during defendant's incarceration, he told her, "[W]hen I get out I'm going to find you and I'm going to do something to put me back in prison." His wife expressed that she "[does] not sleep at night" worrying that defendant is coming for her, and that she and her children "have bags packed now and [are] ready to go in case he's getting out [of jail]." She conceded that, although defendant beat her frequently, he never hit his children.

Defendant asked the court to consider his alcohol abuse issues and allow defendant to participate in a treatment program. The trial court concluded that, while defendant had attempted to get sober and receive treatment for his alcohol abuse issues in the past, defendant had never succeeded in his rehabilitation and did not follow through with his previous alcohol treatment program or show up to individual and group therapy sessions. The trial court denied defendant's request, and concluded that defendant had failed in his previous attempts at rehabilitation and had little likelihood of success in another treatment program.

The trial court also noted that, while defendant's criminal history might appear to be less severe, defendant's previous convictions were misleading. The court reflected on the fact that in 2007 and 2008, defendant served jail time for convictions of domestic violence, MCL 750.81(2) and MCL 750.81(3), respectively. The court observed that in 2011, although charged with domestic violence, the charge was reduced to disturbing the peace, MCL 750.170. Between 2012 and 2013, defendant faced charges of aggravated assault, MCL 750.81a, and assaulting or resisting a police officer, MCL 750.81d, both of which were reduced to disturbing the peace. In 2020, defendant violated his probation by failing to report his police contact to his parole agent; his probation was also revoked because of his assaultive and abusive behavior. The trial court

determined that defendant's unsuccessful previous attempt at probation and his pattern of assaultive behavior and violence supported a higher minimum sentence than the guidelines recommended.

At the end of the sentencing hearing, the trial court concluded that defendant's case warranted a minimum sentence above the recommended guidelines range. For defendant's witness intimidation by threat to kill or injure conviction, the court calculated a minimum sentence range of 36 to 71 months' imprisonment, with a maximum sentence of 15 years.[3] The court concluded that defendant's threats to his wife put her in "immense fear and has caused her immense stress." Further the court concluded that, because of defendant's "repeated criminal activity, his inability to be rehabilitated, his inability to finish a probation, [and] his inability to maintain sober [sic]," defendant was a "danger to society and to his family." The trial court sentenced defendant to 10 to 15 years' imprisonment for the witness intimidation by threat to kill or injure conviction, and a sentence of 38 to 60 months' imprisonment for the domestic violence conviction. Defendant is not challenging his sentence for the domestic violence conviction.

On January 21, 2022, defendant filed an application for leave to appeal, arguing that the trial court abused its discretion by not considering defendant's mitigating circumstances and that the minimum sentence above the guidelines range was not reasonable and proportional to defendant's crime for the witness intimidation conviction. This Court granted defendant's application for leave to appeal. See *People v Swoape*, unpublished order of the Court of Appeals, entered March 2, 2022 (Docket No. 360049).

## II. STANDARD OF REVIEW

We review a defendant's sentence to "determine whether the trial court abused its discretion by violating the principle of proportionality." *People v Steanhouse*, 500 Mich 453, 461; 902 NW2d 327 (2017). A trial court abuses its discretion if the imposed sentence is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 459-460 (quotation marks and citation omitted).

## III. ANALYSIS

Defendant argues that the trial court imposed a minimum sentence of 10 years' imprisonment for the witness intimidation by threat to kill or injure conviction disproportionate to his crime. We disagree.

Under *People v Lockridge*, 498 Mich 358, 399; 870 NW2d 502 (2015), Michigan's sentencing guidelines are advisory. "A court may depart from the appropriate sentence range established under the sentencing guidelines set forth in chapter XVII if the departure is reasonable and the court states on the record the reasons for departure." MCL 769.34(3) (citation omitted).

---

[3] The trial court noted that had defendant been convicted as a fourth-offense habitual offender, defendant's minimum sentencing guidelines range would have been 36 to 142 months. However, as part of defendant's plea agreement, the prosecution did not pursue an habitual offender enhancement.

Any sentence that departs from the guidelines range must adhere to the principle of proportionality. See *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017). The test under this principle is "whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id*. at 521 (quotation marks and citations omitted). When applying the proportionality standard, several factors may be considered, including:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lawhorn*, 320 Mich App 194, 207; 907 NW2d 832 (2017) (quotation marks and citation omitted).]

Defendant argues that his minimum sentence is disproportionate and that the trial court did not consider certain mitigating factors in his favor in its sentence determination. We disagree. The record reflects that during a four-month period, defendant made numerous threatening phone calls to his wife. In at least five of the calls, defendant threatened to kill her once released from jail. Defendant told several of his family members that he intended to kill his wife. Defendant also told his wife that his aunt would be waiting for her outside of her house and would hurt her. Further, defendant used a texting app provided by the jail to send his wife death threats. He also used the app to text his children and told them that he intended to kill their mother. The record also indicates that defendant attempted to intimidate his wife with his threats. Applying the proportionality factor that considers the seriousness of defendant's offense, we conclude that defendant's repeated threats over a fourth-month period through various means of communication establish the seriousness of the offense and the gravity of defendant's behavior. The record, therefore, supports the trial court's determination to impose an upward departure minimum sentence.

Moreover, the record reflects that defendant has a pattern of assaultive behavior and domestic violence that led to multiple prior convictions for domestic violence and charges of several assault crimes which were reduced to disturbing the peace. The record indicates that defendant also has a history of violating probation on his domestic violence convictions, as well as violating probation twice on convictions of operating while intoxicated. The trial court properly determined that defendant's pattern of assaultive behavior and violence supported a higher minimum sentence than that recommended under the guidelines. Defendant's conduct and lack of potential for rehabilitation are both factors under the proportionality standard, and here, the trial court's imposition of an upward departure sentence cannot be said to be unreasonable or disproportionate considering defendant's pattern of abusive behavior against his wife and police officers, as well as defendant's previous inability to complete his probation.

Defendant argues that his alcohol abuse issues are a mitigating factor that make the trial court's minimum sentence unreasonable and disproportionate. The record, however, indicates that the courts had given defendant an opportunity to become sober and receive treatment for his alcohol abuse issues, but defendant failed in his rehabilitation attempts. Defendant did not follow through with his alcohol treatment program and failed to appear for individual and group therapy sessions. The trial court correctly concluded that defendant failed in his attempts at rehabilitation

and would unlikely be successful in another treatment program. We agree and conclude that defendant's substance abuse issues, in light of the seriousness of the death threats to his wife and his pattern of domestic violence, did not outweigh the aggravating factors supporting the minimum sentence imposed by the trial court.

Defendant also argues that, because his wife stayed with him instead of divorcing him, defendant cannot be a bad person. Defendant's wife's choice not to leave a dangerous relationship in which she suffered domestic violence at his hands does not support his claim that the court imposed an improper minimum sentence. The record indicates that defendant's wife stated at the sentencing hearing that she "[does] not sleep at night" worrying that defendant is coming for her, and that she and her children "have bags packed now and [are] ready to go in case he's getting out [of jail]." That defendant's wife has not divorced defendant does not support his good character claim. We conclude that the fact defendant and his wife remain married is not a mitigating factor that outweighs defendant's threats and prior abusive history.

We are also not persuaded by defendant's argument that he is a good father to his children and that the trial court's sentence will deprive his children of a loving father. Defendant offers no examples of his decency to his children other than the fact that he has not hit them. No other evidence establishes that he has been a good father, and we conclude that defendant not hitting his children is not a mitigating factor that would outweigh defendant's danger to his family and society.

Because defendant's sentence is reasonable and proportionate to the offense and the offender, the trial court did not abuse its discretion by sentencing defendant to a minimum sentence of 10 years' imprisonment. Defendant is not entitled to resentencing.

Affirmed.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ James Robert Redford